HELEN GRESCHLER, Respondent, v JEROME GRESCHLER, Appellant.

Second Department, December 10, 1979

### APPEARANCES OF COUNSEL

*Joseph Heller* for appellant.

*Forster & Kadish (Gerald Kadish* of counsel), for respondent.

*Robert Abrams, Attorney-General (Robert J. Schack* and *George D. Zuckerman* of counsel), intervenor *pro se* (see CPLR 1012, subd [b]).

### OPINION OF THE COURT

MANGANO, J.

This appeal presents the question of whether section 5-311 of the General Obligations Law is constitutional in light of *Orr v Orr* (440 US 268). We hold that it is unconstitutional insofar as it denies husbands and wives the right to contract to relieve the husband of his liability to support his wife, but does not forbid them to contract to relieve the wife of her duty to support her husband unless he is or is likely to become a public charge.

The parties were married on June 26, 1955 and have three children ages 23, 20 and 16. They entered into a separation agreement on August 22, 1975. In October, 1975 the plaintiff executed a power of attorney to enable her husband to obtain a divorce in the Dominican Republic. While the record before this court does not show it, it appears that a divorce was obtained and that the decree provided for the survival of the separation agreement *(Greschler v Greschler,* NYLJ, Dec. 4, 1978, p 15, col 3).

The agreement provides support for the unemancipated children but not for the plaintiff, who specifically "waives any and all claims against the Husband for alimony" in paragraph 5 thereof.

The plaintiff seeks to have the separation agreement declared void in whole or in part and the marriage reinstated.

She also seeks support for herself and her children and counsel fees. The defendant moved to dismiss the complaint pursuant to CPLR 3211 for failure to state a cause of action and Special Term denied the motion. The issue before this court is whether either of the two causes of action pleaded by the plaintiff is valid.

I

The first cause of action sounds in fraud. The plaintiff alleges that the defendant knowingly misrepresented his financial circumstances to induce her to execute the separation agreement and power of attorney. Relying on his representations, she agreed to the terms of the separation agreement and permitted him to obtain a divorce. The key allegations of the first cause are set forth in paragraph 10 of the complaint:

"10. That the plaintiff's execution of Exhibits A and B [the separation agreement and power of attorney] were procured through the fraud of the defendant as follows:

"A. The defendant represented that his gross annual earnings for the year and/or years prior to 1975 were a certain amount; that in fact, the defendant's gross annual earnings for said years were materially in excess of that so represented.

"B. The amount of gross sales of entities of which the defendant was a principal for a certain amount; that, in fact, the amount of the gross sales for said years were materially in excess of that so represented.

"C. The defendant represented that the net amounts realized by him during said years were a certain amount; that, in fact, the aforesaid amounts were materially in excess of that so represented.

"D. The defendant represented that the number of and amount of total assets of business entities with which he was associated was a certain amount and that he had a certain specific percentage interest therein; that, in fact, both were materially different."

In my opinion, these bare conclusory allegations give neither the court nor the defendant adequate notice of what the plaintiff intends to prove. They are general allegations and therefore merely invite a general denial.

The plaintiff properly points out that she should not be expected to plead matters in her adversary's exclusive posses-

sion. (See, generally, *Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187.) But in alleging fraud, the plaintiff is asserting that the defendant made certain misrepresentations to her. In answering the defendant's motion to dismiss as to the first cause of action, the plaintiff has offered no satisfactory explanation for her failure to set forth her husband's representations with particularity and has failed to explain why her pleadings are so general.

Pleadings should be liberally construed and a complaint should not be dismissed for failure to state a cause of action when a cause can be discerned in the facts alleged, no matter how poorly those facts are stated. (CPLR 3026; *Guggenheimer v Ginsburg,* 43 NY2d 268, 275.) However, the essential material facts must appear on the face of the complaint. When some essential fact is not pleaded, its absence should be explained when the pleadings are challenged.

What will constitute adequate pleadings in a given case will depend upon the nature of the cause pleaded and the circumstances of the parties. However, a complaint is not acceptable if it is drawn as though it had been copied verbatim from a standard form book. The purpose of a pleading is to focus the court's and the adverse party's attention on the material facts of the case and to present the issues to be decided at trial. The first pleaded cause of action in this complaint does nothing to further those ends and the plaintiff has not satisfactorily explained its inadequacy. The first cause of action does not meet the minimum requirements of CPLR 3013 and 3016 (subd [b]) and cannot withstand the defendant's motion to dismiss. (Cf. *Meltzer v Klein,* 29 AD2d 548.)

II

In her second cause of action, the plaintiff alleges that paragraph 5 of the separation agreement, in which she waived all claims to support, is void as against public policy. The cause is founded on section 5-311 of the General Obligations Law, which provides, in pertinent part: "A husband and wife cannot contract * * * to relieve the husband from his liability to support his wife or to relieve the wife of liability to support her husband provided that she is possessed of sufficient means and he is incapable of supporting himself and is or is likely to become a public charge."

Section 5-311 has its origin in a series of enactments dating from 1835. Under the common law, a married woman had

virtually no power to transact business in her own right during coverture. She was *sub virga,* under the rod of her husband. The husband, in turn, was required to maintain his wife.

In 1848 women were given the right to hold property acquired before marriage in their sole and separate estates and to receive property by "gift, grant devise or bequest". (L 1848, ch 200, § 3.) The great advance was that the "rents issues and profits" of property held by a wife in her sole estate were not subject to her husband's disposal and could not be made to answer for his debts. Women continued to win rights until they were able to enter into virtually any kind of contract with anyone except with their husbands. (L 1884, ch 381, § 2.)

The modern law has its origins in a modification of the 1884 statute which permitted contracts between husbands and wives, with certain exceptions (L 1892, ch 594, § 1): "A married woman may contract with her husband or any other person to the same extent, with like effect, and in the same form as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate or otherwise, and in no case shall a charge upon her separate estate be necessary. But nothing herein contained shall be construed to authorize the husband and wife to enter into any contract by which the marriage relation shall be altered or dissolved or to relieve the husband from his liability to support his wife."

The law remained virtually unchanged until 1960 when the public charge proviso was added for the purpose of conforming the language of this section to the recently adopted Uniform Support of Dependents Law. (L 1960, ch 132.)

It cannot be contended that the support provisions of section 5-311 treat husbands and wives equally. This gender-based classification cannot pass constitutional muster unless it serves some important governmental objective. It had been suggested, quite correctly, that *Orr* recognizes the legitimacy of statutes that help needy spouses and that a legislature may pass gender-based classifications designed to compensate women for past wrongs. *(Orr v Orr,* 440 US 268, *supra.)*

The legislative history of section 5-311 of the General Obligations Law belies any thought that it is designed to redress

past wrongs visited upon women. To the contrary, it is another manifestation of an oppressive and discriminatory common-law tradition.

Unlike the alimony statute considered in *Orr* and the counsel fee statutes examined by this court in *Childs v Childs* (69 AD2d 406), section 5-311 is a purely restrictive statute. Its existence cannot be explained or justified without falling back on its basic assumption that women are naturally inferior. The *Orr* court specifically warns us that (p 283): "Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing the stereotypes about the 'proper place' of women and their need for special protection. Cf. *United Jewish Organizations v Carey,* 430 U.S. 144, 173-174 (opinion concurring in part). Thus, even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored. Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex."

Section 5-311 bears the imprint of its common-law origins. It assumes that any agreement which does not provide for the wife's support is inherently unfair but that one which fails to provide for the husband's is not, unless he is or is likely to become a public charge. This flows logically from the assumption that wives are naturally dependent upon their husbands for support but that husbands normally do not require support from their wives. The statute also makes the more invidious assumption that wives are subservient and incapable of negotiating their own separation agreements with their husbands.

The statute provides needy spouses with neither support nor other necessaries. It offers wives nothing but protection from their own supposed incapacities. I cannot accept an argument that the statute is designed to provide for needy spouses, using the term "wife" as a proxy for "needy spouse". The statute clearly focuses not upon need but upon sex and it cannot be rationally defended on the grounds that it serves a legitimate governmental objective without ultimate reliance on the very assumptions that the Supreme Court of the United States has condemned. The statute is unconstitutional as drawn.

### III

It has been suggested that this statute should be read expansively to extend its protection to husbands as well as wives. As we said in *Childs* (69 AD2d 406, 418, *supra),* "an appellate court has an obligation to pursue every reasonable path of reconciliation of the challenged statute consonant with the Constitution, rather than setting it aside." However, we also noted that courts are traditionally reluctant to extend the reach of a statute except under appropriate circumstances. I do not believe such circumstances exist here.

There is no common-law precedent for a rule preventing husbands from waiving their right to support. In fact, husbands have no common-law right to support from their wives. Traditionally, married women's rights statutes have been strictly construed and the courts of this State have been reluctant to read the laws expansively, especially when such a reading threatened to intrude upon the rights of husbands. (McKinney's Cons Laws of NY, Book 1, Statutes, § 303; cf. *White v Wager,* 25 NY 328, 330-331.) There is no common-law antecedent to which we may return.

As *Orr* reminds us, we may cure an equal protection violation "either by extending benefits to the previously disfavored class or by denying benefits to both parties" (p 272). However, there are no benefits to extend as there were, for example, in *Califano v Goldfarb* (430 US 199 [survivors' benefits]) or in *Califano v Westcott* (— US —, 47 USLW 4817 [AFDC benefits]) and no rights to be granted to an excluded class that had previously been given only to members of the included class, as in *Levy v Louisiana* (391 US 68 [right of illegitimate children to sue in wrongful death actions]). The effect of section 5-311 of the General Obligations Law is negative. Extending its protection to husbands would mean depriving them of a right to contract which they had previously enjoyed.

Statutes that violate equal protection are not usually read expansively unless there is a strong public policy reason for doing so. (See *Childs v Childs,* 69 AD2d 406, *supra; Matter of Malpica-Orsini,* 36 NY2d 568, 571, app dsmd *sub nom. Orsini v Blasi,* 423 US 1042.) When a restrictive reading threatens to create a hardship (see, for example, *Califano v Westcott, supra,* p —, 47 USLW 4817, 4821) or when, as in *Childs,* a restrictive reading would effectively prevent impecunious wives from obtaining relief, a court will strain to avoid the adverse consequences.

A declaration that the subject provision of section 5-311 is void will work no hardship. Husbands have never had the protection of the law and women can protect themselves by not entering into improvident separation agreements with their husbands. If a wife does enter into an unfair agreement because of her husband's overreaching, the contract may still be subject to rescission. (See, generally, *Christian v Christian*, 42 NY2d 63.)

The Legislature has not had a reasonable opportunity to examine section 5-311 in light of the constitutional standards set forth in *Orr*. It may decide to extend the protection of section 5-311 to husbands. Then again, it may well decide that the statute's support provision has outlived its usefulness and now merely hampers the negotiation of separation agreements. It could decide to restructure the whole statutory framework for property settlements and support in a way that would make the support provision of the statute otiose.

I cannot predict what the Legislature will ultimately do and it would be presumptuous to assume that it will extend the protection of section 5-311 to husbands. Courts should not legislate. However, a court that is asked to declare a separation agreement void because it violates a statute cannot do so if the statute itself is unconstitutional. The support provision of section 5-311 is unconstitutional and, therefore, the plaintiff's second pleaded cause of action must be dismissed.

Accordingly, the complaint should be dismissed with leave to plaintiff to serve an amended complaint if she be so advised.

MOLLEN, P. J., TITONE and GIBBONS, JJ., concur.

Order of the Supreme Court, Kings County, dated March 14, 1979, reversed, on the law, without costs or disbursements, motion granted and complaint dismissed, with leave to plaintiff to serve an amended complaint, if she be so advised, within 20 days after service upon her of a copy of the order to be entered hereon, together with notice of entry thereof.