# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2008 Term

FILED

November 19, 2008

released at 10:00 a.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 33834

**PAUL E. FORSHEY AND MELISSA L. FORSHEY,**
**Plaintiffs Below, Appellants,**

**V.**

**THEODORE A. JACKSON, MD,**
**Defendant Below, Appellee.**

---

**Appeal from the Circuit Court of Kanawha County**
**Honorable Jennifer Bailey Walker, Judge**
**Civil Action No. 06-C-1534**
**AFFIRMED**

---

**Submitted: October 28, 2008**
**Filed: November 19, 2008**

Mark F. Underwood
Underwood & Proctor Law Offices
Huntington, West Virginia
Attorney for the Appellants

Robert J. D'Anniballe, Jr.
Pietragallo Gordon Afano Bosick
 & Raspanti, LLP
Weirton, West Virginia
Attorney for the Appellee

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE ALBRIGHT not participating.**

**SENIOR STATUS JUSTICE McHUGH sitting by temporary assignment.**

**SENIOR STATUS JUSTICE McHUGH disqualified.**

**JUDGE BEANE sitting by temporary assignment.**

**JUDGE BEANE disqualified.**

**JUDGE BLAKE sitting by temporary assignment.**

**JUSTICE STARCHER dissents and reserves the right to file a dissenting opinion.**

**JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      A circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment.

2.      "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.'  Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995)."  Syllabus point 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998).

3.      "The Medical Professional Liability Act, *W. Va. Code*, 55-7B-4 [1986], requires an injured plaintiff to file a malpractice claim against a health care provider within two years of the date of the injury, or 'within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]'  However, the Act also places an outside limit of 10 years on the filing of medical malpractice claims, regardless of the date of discovery, unless there is evidence of fraud, concealment or misrepresentation of material facts by the health care provider."  Syllabus point 1, *Gaither v. City Hospital, Inc*., 199 W. Va. 706, 487 S.E.2d 901 (1997).

i

4.      Under the continuous medical treatment doctrine, when a patient is injured due to negligence that occurred during a continuous course of medical treatment, and due to the continuous nature of the treatment is unable to ascertain the precise date of the injury, the statute of limitations will begin to run on the last date of treatment.

5.      In the context of a medical malpractice action, in order to establish a continuing tort theory a plaintiff must show repetitious wrongful conduct. Merely establishing the continuation of the ill effects of an original wrongful act will not suffice.

**Davis, Justice:**[1]

Paul E. Forshey and his wife Melissa, appellants herein and plaintiffs below (hereinafter collectively referred to as "the Forsheys"), appeal an order of the Circuit Court of Kanawha County that dismissed their malpractice action against Dr. Theodore A. Jackson, M.D., appellee herein and defendant below (hereinafter referred to as "Dr. Jackson"), as having been untimely filed. The Forsheys urge this Court to adopt the continuous medical treatment doctrine and to apply that doctrine to find their action was timely. Alternatively, the Forsheys argue that their claim was timely under a continuing tort theory. After thorough consideration of the continuous medical treatment doctrine, we agree that it should be adopted and do so herein. However, we conclude that the doctrine does not apply to the Forsheys' action. We further find that the Forsheys' complaint failed to set out a claim for a continuing tort. Therefore, we affirm the circuit court.

---

[1]Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright. Because Senior Status Justice McHugh is disqualified from participating in the instant case, the Honorable J. D. Beane, Judge, was designated to sit by temporary assignment. However, after Judge Beane determined that he also was disqualified from participating in the instant case, the Honorable Paul M. Blake, Jr., Judge, was designated to sit by temporary assignment.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This case is presently before this Court for review of the lower court's order granting the defendant's motion to dismiss.  Accordingly, the facts set out below are gleaned from the pleadings.

In November 1994, Paul E. Forshey (hereinafter individually referred to as "Mr. Forshey") presented to Dr. Jackson complaining of carpel tunnel syndrome in both wrists.  It is undisputed that Dr. Jackson performed surgery on Mr. Forshey on July 6, 1995.

Mr. Forshey contends that, during post operative office visits with Dr. Jackson, he (Mr. Forshey) complained of pain and a knot over the palmar aspect of his left thumb, along with tenderness, swelling, and trouble using tools;[2] nevertheless, no x-rays of Mr. Forshey's hand were ordered by Dr. Jackson.  Mr. Forshey alleges that, following the surgery, he continued to receive medical care from Dr. Jackson until January 31, 1997.  During one of Mr. Forshey's visits with Dr. Jackson, Dr. Jackson recommended exploratory surgery, which was initially set for February 3, 1997; however, on January 31, 1997, Dr. Jackson requested that the date of surgery be changed due to a scheduling conflict.  The surgery was then set for February 17, 1997.  On February 13, 1997, Mr. Forshey cancelled

---

[2]Mr. Forshey, who is left-handed, was a locksmith and worked with his hands.

2

the surgery. Though Mr. Forshey indicated that he would reschedule the surgery at a later time, he never did so.

Mr. Forshey avers that he continued to suffer in pain over the next eight years until the summer of 2005, when he suffered an unrelated injury to his left index finger and, as a result, received an x-ray of his left hand. The x-ray revealed a 3.4 cm x 5 mm metallic foreign body in the palmar aspect of the hand.[3] According to the certificate of merit accompanying the Forsheys' complaint, the foreign body was described in his medical records as "a piece of knife blade." The certificate of merit further concluded that "according to [Mr. Forshey's] medical records, . . . the only explanation for this foreign body is the Carpal Tunnel surgery which he had July 1995. This was performed by Dr. Ted Jackson . . . ."

In April, 2006, Dr. Jackson was presented with a notice of claim[4] and certificate of merit.[5] Mr. Forshey filed his complaint alleging medical malpractice and including a loss of consortium claim on behalf of his wife, Melissa Forshey, on August 3, 2006. Thereafter, on September 26, 2006, Dr. Jackson filed a motion to dismiss claiming that

---

[3]This x-ray was performed at Arrowhead Regional Medical Center in Colton, California.

[4]*See* W. Va. Code § 55-7B-6(b) (2003) (Repl. Vol. 2008).

[5]*See id.*

this suit was untimely filed pursuant to W. Va. Code § 55-7B-4 (1986) (Repl. Vol. 2008).[6]

By order entered April 3, 2007, the Circuit Court of Kanawha County granted the motion. This appeal followed.

## II.

## STANDARD OF REVIEW

This case is before this Court on appeal from the circuit court's order granting Dr. Jackson's motion to dismiss made pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure,[7] which motion was based upon the statute of limitations and statute of

---

[6]The text of W. Va. Code § 55-7B-4 (1986) (Repl. Vol. 2008), states in relevant part:

(a) A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of injury.

. . . .

(c) The periods of limitation set forth in this section shall be tolled for any period during which the health care provider or its representative has committed fraud or collusion by concealing or misrepresenting material facts about the injury.

[7]Dr. Jackson's motion to dismiss merely stated that it was made pursuant to

(continued...)

4

repose found in W. Va. Code § 55-7B-4.[8]  In granting the motion, however, the circuit court

relied on matters outside the pleadings.  In this regard, the order expressly refers to the

opinion of Dr. Edward W. Eskew.  Dr. Eskew's opinion was contained in the certificate of

merit that was attached, along with the notice of claim, as an exhibit to the complaint.[9]  This

[7](...continued)
Rule 12(b) of the West Virginia Rules of Civil Procedure, and did not specifically identify the particular subsection of the rule being applied.  Insofar as the basis for the motion was that the claim was not timely filed pursuant to W. Va. Code § 55-7B-4, we note that the motion properly falls under Rule 12(b)(6) as failing to assert a claim upon which relief can be granted.  *See* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 349 (3d ed. 2008) ("A statute of limitations may support dismissal under Rule 12(b)(6), where it is evident from the plaintiff's pleading that the action is barred, and the pleading fails to raise some basis for tolling or the like." (footnote omitted)).

[8]Statutes of limitation and repose are affirmative defenses.  *See* Cleckley, Davis, & Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 8(c)[i], at 189 ("The statute of limitations is a defense which should be set forth affirmatively pursuant to Rule 8(c) . . . ." (footnote omitted)).  However, it has been explained that,

> [i]n an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim.  Two conditions must be met for such a dismissal.  First, the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice.  Second, the facts so gleaned must conclusively establish the affirmative defense.

*Id.* § 12(b)(6)[2], at 349 (footnotes omitted) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429 (S.D.N.Y. 2003); *Ingram v. Rencor Controls, Inc.*, 217 F. Supp. 2d 141 (D. Me. 2002)).  These conditions have been met in the instant case.

[9]W. Va. Code § 55-7B-6(b) (2003) (Repl. Vol. 2008) requires a claimant to serve each prospective defendant with a notice of claim and screening certificate of merit as
(continued...)

5

a prerequisite for filing a medical professional liability action against a health care provider. *See, e.g.,* Syl. pt. 3, *Davis v. Mound View Health Care, Inc.*, 220 W. Va. 28, 640 S.E.2d 91 (2006) ("Where a medical malpractice action is dismissed for failure to comply with the pre-suit notice of claim provision set forth in W. Va. Code § 55-7B-6(b) (2003) and the dismissal order does not specify the dismissal to be with prejudice, the dismissal is deemed to be without prejudice. . . ."*); State ex rel. Miller v. Stone*, 216 W. Va. 379, 384, 607 S.E.2d 485, 490 (2004) ("Because Petitioner's certificate of merit was not filed until June 20, 2003, her medical malpractice claim could not be filed until 30 days later . . . ."). W. Va. Code § 55-7B-6(b) states:

> At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

We have previously explained that,

> [u]nder W. Va. Code, 55-7B-6 [2003] the purposes of

(continued...)

Court has previously held that

> [o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith. . . .

Syl. pt. 4, *United States Fid. & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965), *overruled on other grounds by Sprouse v. Clay Communication, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975). *Accord* Syl. pt. 1, *Poling v. Belington Bank, Inc.*, 207 W. Va. 145, 529 S.E.2d 856 (1999). *See also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[3], at 354 (3d ed. 2008) ("Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b)(6). However, if matters outside the pleading are presented to the court and are not excluded by it, the motion must be treated as one for summary judgment and disposed of under Rule 56."). Notwithstanding this general rule, it has been recognized that, in ruling upon a motion to dismiss under Rule 12(b)(6),

---

[9](...continued)
requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts.

Syl. pt. 2, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005).

7

a court may consider, in addition to the pleadings, documents annexed to it, and other materials fairly incorporated within it. This sometimes includes documents referred to in the complaint but not annexed to it. Further, Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice.

*Id.* § 12(b)(6)[2], at 348 (footnote omitted). The United States District Court for the Western

District of Virginia has explained this principle thusly:

> In general, material extrinsic to the complaint may not be considered on a Rule 12(b)(6) motion to dismiss without converting it to a Rule 56 motion for summary judgment, but there are certain exceptions this rule. As the Second Circuit has explained:
>
>> *The complaint is deemed to include any written instrument attached to it as an exhibit* or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.
>>
>> . . . [G]enerally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered. Accordingly, where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated. . . . [O]n a motion to dismiss, a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit. Because this standard has

8

been misinterpreted on occasion, we reiterate here that a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations, alterations in original, and internal quotation marks omitted); *see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir.1994) (citing *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir.1991)); *Miller v. Pac. Shore Funding*, 224 F. Supp.2d 977, 984 n. 1 (D. Md. 2002); 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1327 & n. 7 (3d ed.2004) (citing cases).

*Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 757 n.4 (W.D. Va. 2007) (emphasis added). *See also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment. . . . *Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6).* Fed. R. Civ. P. 10(c) . . . . Additionally, we have noted that '[w]hen . . . a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" (emphasis added) (internal citations omitted)); *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052,

9

1059 (D.C. Cir. 2007) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, *documents attached thereto* or incorporated therein, and matters of which it may take judicial notice." (emphasis added) (citation omitted)); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In general, our review [of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted] is limited to the facts as asserted within the four corners of the complaint, *the documents attached to the complaint as exhibits*, and any documents incorporated in the complaint by reference." (emphasis added)); *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, *we may consider documents that are attached to or submitted with the complaint* . . . and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.' 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed.2004)." (emphasis added) (internal citation omitted)); *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss *the court may consider documents attached to or incorporated in the complaint* and matters of which judicial notice may be taken." (emphasis added)); *Technology Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 920 (D. Md. 2008) ("Consideration of extrinsic evidence is inappropriate in a 12(b)(6) ruling, as the inquiry is limited to the complaint *and the documents attached thereto* or incorporated by reference." (emphasis added)).

Based upon the foregoing, we now hold that a circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to a Rule 56 motion for summary judgment.[10]

Applying this holding to the facts of the instant case, we conclude that the circuit court properly considered the screening certificate of merit that was attached as an exhibit to the Forsheys' complaint when ruling on Dr. Jackson's Rule 12(b)(6) motion to dismiss.[11] Accordingly, in reviewing the circuit court's order in this regard, we apply the de novo standard of review for a motion to dismiss. "'Appellate review of a circuit court's order

---

[10]The Forsheys appear to have experienced some confusion based upon the circuit court's inclusion of findings of fact in its order granting the 12(b) motion to dismiss. Notably, however, this Court has held that "[a] circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact include facts which the circuit court finds relevant, determinative of the issues, and undisputed." Syl. pt. 1, *P.T.P., IV by P.T.P, III v. Board of Educ. of the County of Jefferson*, 200 W. Va. 61, 488 S.E.2d 61 (1997). *See also Easterling v. American Optical Corp.*, 207 W. Va. 123, 134 n.15, 529 S.E.2d 588, 599 n.15 (2000) ("The decision in *P.T.P.* modified W. Va. R. Civ. P. 52(a), which provides that findings of fact and conclusions of law are unnecessary for decisions on Rule 12(b) motions.").

[11]We note that the Forsheys' brief indicates that additional exhibits were attached to their memorandum in opposition to Dr. Jackson's motion to dismiss. However, the record submitted to this Court for review does not disclose that any such exhibits were attached. "The responsibility and burden of designating the record is on the parties, and appellate review must be limited to those issues which appear in the record presented to this Court." *In re Michael Ray T.*, 206 W. Va. 434, 525 S.E.2d 315 (1999). Additionally, we observe that the circuit court's order clearly states that it was dismissing the matter based upon Dr. Jackson's 12(b) motion to dismiss.

11

granting a motion to dismiss a complaint is *de novo*.'  Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)."  Syl. pt. 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998).  In conducting a de novo review, we apply the same standard applied in the circuit court.

> Generally, a motion to dismiss should be granted only where "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59, 65 (1984)) (additional citation omitted).  For this reason, motions to dismiss are viewed with disfavor, and we counsel lower courts to rarely grant such motions. *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605-06, 245 S.E.2d 157, 159 (1978).

*Ewing v. Board of Educ. of County of Summers*, 202 W. Va. 228, 235, 503 S.E.2d 541, 548 (1998).  Furthermore, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true."  *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605, 245 S.E.2d 157, 158 (1978).

> The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief."  Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977), citing *Conley* [*v. Gibson*], 355 U.S. [41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80, 84 (1957)].

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995) (footnote omitted).  Finally, we note that "'[c]omplaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of

12

Civil Procedure.'" *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 488 S.E.2d 901 (1997) (quoting *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. at 776, 461 S.E.2d at 522). Having surveyed the appropriate standards for our consideration of the instant appeal, we proceed to consider its merits.

## III.

## DISCUSSION

Pursuant to W. Va. Code § 55-7B-4(a) (1986) (Repl. Vol. 2008),

> [a] cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of injury.

The instant action was resolved by the circuit court based upon the ten-year statute of repose.[12] The allegations made in this case are that Dr. Jackson performed carpel tunnel surgery on Mr. Forshey on July 6, 1995, and that Dr. Jackson's last professional contact with Mr. Forshey occurred on January 31, 1997. The Forsheys filed the instant action on August 3, 2006, nearly eleven years after the carpel tunnel surgery, and approximately nine and a half years after Mr. Forshey's last professional contact with Dr. Jackson.

---

[12]Accordingly, we need not discuss the discovery rule provisions of W. Va. Code § 55-7B-4 (a) (1986) (Repl. Vol. 2008).

The Forsheys assert two theories under which they contend that their action was timely filed. First, they urge this Court to adopt the continuous medical treatment doctrine and to apply the same to their cause of action. They next argue that, because Mr. Forshey had post-operative follow-up visits with Dr. Jackson, and Dr. Jackson failed to order a diagnostic x-ray of Mr. Forshey's left hand during any of those visits, each visit amounted to an additional separate breach of the standard of care. We will address each of these assignments of error in turn.

### A. Continuous Medical Treatment Doctrine

The Forsheys urge this Court to adopt the continuous medical treatment doctrine and to apply the same to their cause of action in order to conclude that it accrued on January 31, 1997, the day Dr. Jackson rescheduled the exploratory surgery on Mr. Forshey's hand.[13]

With respect to the statute of repose contained in W. Va. Code § 55-7B-4, this Court has observed that

> [t]he Medical Professional Liability Act, *W. Va. Code*, 55-7B-4 [1986], requires an injured plaintiff to file a malpractice claim against a health care provider within two years of the date of the injury, or "within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs[.]"

---

[13]As noted above, Mr. Forshey later cancelled the exploratory surgery.

14

> However, *the Act also places an outside limit of 10 years on the filing of medical malpractice claims, regardless of the date of discovery, unless there is evidence of fraud, concealment or misrepresentation of material facts by the health care provider.*

Syl. pt. 1, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 487 S.E.2d 901 (1997) (second emphasis added).[14] The Forsheys contend that this Court should adopt the continuous medical treatment doctrine, and argue that, if the doctrine was applied to their case, their action would be timely.[15]

The continuous medical treatment doctrine has been described in this way:

> Under the "continuous treatment" doctrine, the running of the statute of limitations is tolled when a course of treatment that includes wrongful acts or omissions has run continuously and is related to the original condition or complaint. Stated another way, the statute does not commence running until treatment by the physician or surgeon has terminated, where the treatment is continuing and of such nature as to charge the physician or surgeon with the duty of continuing care and treatment which is essential to recovery until the relationship ceases. However, where the medical services rendered are intermittent, rather than continuous, the statute of limitations under a medical malpractice statute will begin to run from the

---

[14]The circuit court concluded, and we agree, that the Forsheys' complaint does not set out claims for concealment or misrepresentation of material facts by Dr. Jackson. Likewise, the complaint does not allege fraud.

[15]Moreover, the Forsheys observe that this Court has adopted the continuous representation doctrine in legal malpractice actions. *See* Syl. pt. 6, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996) ("West Virginia adopts the continuous representation doctrine through which the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action.").

15

date of the alleged individual incident of malpractice and not from the date of the last services rendered.

61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 299, at p. 400 (2002) (footnotes omitted).  The rationale for the rule has been explained thusly:

The purpose of statutory provisions for measuring a medical malpractice limitations period from the last date of treatment or hospitalization is to aid a plaintiff who was injured during a period of hospitalization or course of medical treatment, *but who has difficulty ascertaining the precise date of the injury*; in such situations, doubts about the time the cause of action accrued are resolved in the plaintiff's favor by using the last date of treatment or hospitalization as a proxy for the actual date of the tort.

61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 299, at p. 401 (emphasis added) (footnotes omitted).  Thus, the continuous medical treatment doctrine is intended to aid victims of medical malpractice who are unable to pinpoint the exact date of their injury due to the continuing nature of their medical treatment.  *See Gilbert v. Bartel*, 144 S.W.3d 136, 140 -41 (Tex. Ct. App. 2004) ("The limitations period for medical negligence claims is measured from one of three dates: (1) the occurrence of the breach or tort; (2) *the last date of the relevant course of treatment*; or (3) the last date of the relevant hospitalization.  The Texas Supreme Court has repeatedly held that a plaintiff may not choose the most favorable date that falls within [Tex. Rev. Civ. Stat. art. 4590i, § 10.01's] three categories.  Rather, *if the date the alleged tort occurred is ascertainable, limitations must begin on that date.  Thus, if the date is ascertainable, further inquiry into the second and third categories is unnecessary*." (emphasis added) (footnotes omitted)).  As one court explained,

16

[t]he so-called "continuous treatment" rule has been defended on the grounds of fairness as well as on the basis of logic. Certainly it would not be equitable to bar a plaintiff, who for example, has been subjected to a series of radiation treatments in which the radiologist negligently and repeatedly administered an overdosage, simply because the plaintiff is unable to identify the one treatment that produced his injury. Indeed, in such a situation no single treatment did cause the harm; rather it was the result of several treatments, a cumulative effect. From the point of view of the physician, it would seem reasonable that if he had made a mistake, a misdiagnosis for example, he is entitled to the opportunity to correct the error before harm ensues. And, as one court has put it, "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician."

*Lane v. Lane*, 295 Ark. 671, 675, 752 S.W.2d 25, 27 (1988) (quoting 1 D. Louisell & H.

Williams Wachsman, *Medical Malpractice* § 13.08 (1982)).[16] In the *Lane* case, the plaintiff

---

[16]As the Forsheys note, it appears that some form of the continuous medical treatment doctrine has been adopted in a majority of jurisdictions. *See Preer v. Mims*, 323 S.C. 516, 519, 476 S.E.2d 472, 473 (1996) (commenting that the continuous treatment doctrine "has been adopted in one form or another by a significant number of courts around the country," and collecting cases). *See, e.g., Lane v. Lane*, 295 Ark. 671, 676, 752 S.W.2d 25, 28 (1988) ("Given the rationale behind the [continuing treatment] rule, and its growing acceptance, we believe its application in appropriate circumstances is proper."); *Anderson v. George*, 717 A.2d 876, 878 (D.C. 1998) ("[W]e now hold that the continuous treatment rule is applicable in the District of Columbia."); *Ewing v. Beck*, 520 A.2d 653, 663 n.11 (Del. 1987) (recognizing continuous negligent medical treatment doctrine); *Cunningham v. Huffman*, 154 Ill. 2d 398, 406, 609 N.E.2d 321, 325, 182 Ill. Dec. 18, 22 (1993) (holding that "a plaintiff is not barred by the statute of repose if she can demonstrate that there was an ongoing course of continuous negligent medical treatment. To prevail under this cause of action a plaintiff must demonstrate: (1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong"); *Harrison v. Valentini*, 184 S.W.3d 521, 524 (Ky. 2005) (adopting continuous treatment doctrine); *In re Noe*, 958 So. 2d 617, 624 (La. 2007) ("The continuous treatment doctrine [was] adopted by this court in *Carter* [*v. Haygood*, 892 So. 2d 1261 (2005).]"); *Sheldon v. Sisters of Mercy Health Corp.*, 102 Mich. App. 91, 94, 300 N.W.2d 746, 748

(continued...)

17

(1980) ("[U]nder the statute [M.C.L. § 600.5838; M.S.A. § 27A.5838], a malpractice suit is barred if brought more than two years *after the last treatment by a defendant* or six months after discovery of the malpractice." (emphasis added)); *Doyle v. Kuch*, 611 N.W.2d 28, 31 (Minn. Ct. App. 2000) ("Generally, the 'cause of action accrues when the physician's treatment for a particular condition ceases.' . . . This is the general termination of treatment rule." (internal citation omitted)); *Hampton v. Shaw*, 14 Neb. App. 499, 500, 710 N.W.2d 341, 343 (2006) (applying continuing treatment doctrine, but concluding that under facts presented it did not operate to toll the statute of limitations); *McDermott v. Torre*, 56 N.Y.2d 399, 405, 437 N.E.2d 1108, 1110, 452 N.Y.S.2d 351, 353 (1982) ("[T]he time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint.'" (citation omitted)); *Gilbert v. Bartel*, 144 S.W. 3d 136, 140-41 (Tex. Ct. App. 2004) (noting that "[t]he [statutory] limitations period for medical negligence claims is measured from one of three dates: . . . the last date of the relevant course of treatment"); *Harper v. Evans*, 185 P.3d 573, 576 (Utah Ct. App. 2008) ("[T]he continuous negligent treatment rule [was] first adopted in *Peteler v. Robison*, 81 Utah 535, 17 P.2d 244 (1932)."); *Farley v. Goode*, 219 Va. 969, 976, 252 S.E.2d 594, 599 (1979) ("[W]hen malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment in which a particular illness or condition should have been diagnosed in the exercise of reasonable care, the date of injury occurs, the cause of action for that malpractice accrues, and the statute of limitations commences to run when the improper course of examination, and treatment if any, for the particular malady terminates."); *Caughell v. Group Health Co-op. of Puget Sound*, 124 Wash. 2d 217, 229-30, 876 P.2d 898, 905 (1994) ("We affirm today that malpractice claimants have the right to allege the entire course of continuing negligent treatment as one claim. . . . therefore . . . where the tort is continuing, the claim is continuing."); *Westphal v. E.I. du Pont de Nemours & Co., Inc*., 192 Wis. 2d 347, 370, 531 N.W.2d 386, 394 (Wis. Ct. App. 1995) ("The continuous negligent treatment doctrine was adopted in *Tamminen* [*v. Aetna Casualty and Surety Co.*, 109 Wis. 2d 536, 553, 327 N.W.2d 55, 63 (1982)]."); *Metzger v. Kalke*, 709 P.2d 414, 417 (Wyo. 1985) ("We hold with the foregoing authorities that the act, error or omission which starts the running of the statute of limitations against medical malpractice actions is the termination of the course of treatment for the same or related illnesses or injuries."). *But see Bousset v. Walker*, 285 Ga. App. 102, 103, 645 S.E.2d 593, 595 (2007) ("In [*Young v. Williams*, 274 Ga. 845, 560 S.E.2d 690 (2002)], the Supreme Court reversed, rejected this court's adoption of the continuous tort doctrine, and held that the statute of limitation in a medical malpractice action begins to run at the time of the misdiagnosis."); *Ratcliff v. Graether*, 697 N.W.2d 119, 125 (Iowa 2005) ("We need not decide whether we should reject the continuous treatment doctrine outright

(continued...)

received "regular injections of narcotics" beginning in 1966 and continuing until 1984. 295 Ark. at 673, 752 S.W.2d at 26. The plaintiff sued in 1985 alleging the treatment had caused various injuries, including injuries to her shoulder, arm, and back, as well as a drug addiction. Under the relevant Arkansas statute, she was required to commence her action within two years after the date of the wrongful act. 295 Ark. at 673, 752 S.W.2d at 26 (citing Ark. Code Ann. § 16-114-203(a) (1987)). In deciding to adopt the continuing treatment doctrine, the *Lane* court observed that, "since 1940, there has been a steady trend toward judicial acceptance of the continuing treatment approach;" the court went on to conclude that "[g]iven the rationale behind the rule, and its growing acceptance, we believe its application in appropriate circumstances is proper." 295 Ark. at 675-76, 752 S.W.2d at 27-28.

We are persuaded that the continuous medical treatment doctrine should be

---

[16](...continued)
in all circumstances."); *Toas v. Shapiro*, 23 Mass. L. Rptr. 194, ___ n.6, 2007 WL 3014763, at *3 n.6 (Mass. Super. Ct. 2007) ("To date, the [Supreme Judicial Court of Massachusetts] has not adopted the continuous treatment doctrine."); *Carpenter v. Rohrer*, 714 N.W.2d 804, 814 (N.D. 2006) ("We have not adopted the continuous treatment rule in medical malpractice cases, although we have alluded to the rule in several of our past decisions."); *Haggart v. Cho*, 703 A.2d 522, 527 (Pa. Super. Ct. 1997) ("Pennsylvania has not adopted a per se 'continuous treatment rule,' tolling the statute of limitations in a malpractice case until the end of treatment by the defendant. . . . Rather, the courts of this Commonwealth simply apply the discovery rule to determine the date when a patient could reasonably be expected to know of his injury." (citations omitted)); *Harrison v. Bevilacqua*, 354 S.C. 129, 139, 580 S.E.2d 109, 114 (2003) ("[W]e reject adoption of the continuous treatment rule."); *Stanbury v. Bacardi*, 953 S.W.2d 671, 672 (Tenn. 1997) ("We conclude that the common law doctrine of continuing medical treatment has been completely abrogated by adoption of the discovery rule in Tennessee.").

adopted for determining the date of injury where such date is not identifiable due to the nature of the medical treatment received. Therefore, based upon the foregoing, we now hold that, under the continuous medical treatment doctrine, when a patient is injured due to negligence that occurred during a continuous course of medical treatment, and due to the continuous nature of the treatment is unable to ascertain the precise date of the injury, the statute of limitations will begin to run on the last date of treatment.

Applying this holding to the facts of the case at bar, we find the continuing treatment doctrine is not applicable to Mr. Forshey's claim. Mr. Forshey's injury did not result from a continuing course of treatment that rendered him unable to identify the precise date of his injury. Rather, the alleged negligence in the instant case occurred on a date certain, the date that Dr. Jackson performed surgery on Mr. Forshey's hand and allegedly left a scalpel blade in his hand. In this regard, it has been observed that "[w]here the patient suffers an identifiable injury through some affirmative act of negligence on the part of the practitioner, the fact that thereafter the practitioner continues to care for and treat the patient does not postpone the commencement of the limitation period." 61 Am. Jur. 2d *Physicians, Surgeons, Etc.* § 299, at p. 401 (footnotes omitted). Because Mr. Forshey's claim arose on July 6, 1995, the date on which Dr. Jackson performed the carpel tunnel surgery, the circuit court was correct in concluding that, pursuant to the statute of repose contained in W. Va. Code § 55-7B-4, "the absolute latest that this action could have been filed would have been on July 6, 2005, which is ten years after the date of the original surgery and alleged injury."

20

The Forsheys' action was filed on August 3, 2006, nearly eleven years after the date upon which Dr. Jackson performed surgery on Mr. Forshey's hand. Therefore, the action was not timely filed, and the circuit court correctly granted the motion to dismiss.

### B. Continuing Tort

The Forsheys next argue that, even in the absence of the continuing medical treatment doctrine, they have timely filed their cause of action because additional visits Mr. Forshey had with Dr. Jackson in 1996 and 1997, wherein Dr. Jackson failed to order an x-ray of Mr. Forshey's hand, amounted to continuing torts. We disagree.

In *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002), this Court formally adopted the continuing tort theory in a non-medical malpractice setting by holding that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." However, in the earlier case of *Ricottilli v. Summersville Memorial Hospital*, 188 W. Va. 674, 677, 425 S.E.2d 629, 632 (1992), this Court recognized the continuing tort doctrine in a context similar to medical malpractice and ultimately found that it did not apply under the facts presented due to the absence of repetitious wrongful conduct.[17] *Ricottilli* involved a suit filed by a mother asserting, in

---

[17]The plaintiff in *Ricottilli* attempted to bring her claim as a medical
(continued...)

21

relevant part, a claim for outrageous conduct against Charleston Area Medical Center

(hereinafter "CAMC") arising from CAMC's autopsy of her deceased daughter. The

Ricottilli Court explained that

> [w]e reject Appellant's continuing tort theory essentially because the concept of a continuing tort requires a showing of repetitious, wrongful conduct. *See Handley v. Town of Shinnston*, 169 W. Va. 617, 289 S.E.2d 201 (1982) (finding continuing tort based on permitting water to regularly flood another's property). Moreover, as this Court explained in *Spahr v. Preston County Board of Education*, 182 W. Va. 726, 391 S.E.2d 739 (1990), a wrongful act with consequential continuing damages is not a continuing tort. *Id*. at 729, 391 S.E.2d at 742. The alleged continuing wrong in this case is the untimely and incomplete autopsy report as well as the failure of CAMC to date to report the results of the tissue sample analysis.
>
> With regard to the dilatoriness of the autopsy report, upon its tender to Appellant on January 9, 1990, or thereabouts, the act of delay was fixed and the only aspect of the claim that could be said to continue is damages, but not the wrongful act itself. *See id.* Similarly, the incompleteness of the autopsy report, insofar as Appellant contends the absence of a specific cause of death renders the report incomplete, as a wrongful act was fixed as of January 9, 1990. . . . Because Appellant's claims pertaining to the autopsy and tissue reports are fixed acts and do not involve continuing wrongful conduct, the continuing tort theory is inapposite.

188 W. Va. at 677-78, 425 S.E.2d at 632-33.

---

[17](...continued)
malpractice action; however, this Court held that, "[b]y definition, a deceased individual does not qualify as a 'patient' under the Medical Professional Liability Act ('Act'), West Virginia Code §§ 55-7B-1 to -11 (Supp.1992), and therefore cannot be the basis for a cause of action alleging medical professional liability pursuant to the Act." Syl. pt. 1, *Ricottilli v. Summersville Mem'l Hosp.*, 188 W. Va. 674, 677, 425 S.E.2d 629, 632 (1992).

Our application of the continuing tort theory in *Ricottilli* is in accord with other jurisdictions that have examined the doctrine in the context of medical malpractice actions. For example, in *Frankel v. Clark*, 213 Ga. App. 222, 223, 444 S.E.2d 147, 149 (1994), the plaintiff sued for dental malpractice claiming injury resulting from the failure to discover a cyst in her lower right jaw. The *Frankel* court summarized the plaintiff's claims thusly:

> Specifically, [plaintiff's expert] avowed that [defendants] were negligent in failing to take adequate diagnostic x-ray films of [plaintiff] Clark prior to the placement of a bridge on the right side of her mouth; in failing to take adequate diagnostic x-ray films of her subsequent to the placement of the bridge on the right side of her mouth when she continued to experience pain; by rendering improper and inadequate dental treatment to her by placing a bridge in an area where a cyst was present; and in failing to diagnose the cyst in the area where the right bridge was placed.

213 Ga. App. at 222, 444 S.E.2d at 148. In rejecting the plaintiff's argument that the treatment she received amounted to a continuing tort, the court explained:

> Clark argues that four separate acts of negligence are involved here and that the statute had not expired on all of them. She contends that in addition to the misdiagnosis, her expert identified that two acts of negligence occurred subsequent to the placement of the bridge-between March 29, 1990 and August 30, 1990. She contends that [defendant] Frankel's failure to take adequate diagnostic x-ray films subsequent to the placement of the bridge on the right side of her mouth and his failure to diagnose the presence of a cyst in the area where the right bridge was placed continued until August 30, 1990. We do not accept Clark's argument. Unlike situations in which separate acts of negligence may occur, . . ., in this case the allegedly negligent act-the failure to diagnose the cyst and the subsequent placement of the bridge-was complete by March 29. *Frankel's alleged failure to correct his previous negligence does not constitute additional acts of negligence*[,] *and we do not*

23

> *accept Clark's argument that his continued failure to recognize the problem constituted a continuing tort.*

*Id.* at 223, 444 S.E.2d at 149 (emphasis added).

A Louisiana court reached a similar conclusion in *Collum v. E.A. Conway Medical Center*, 763 So. 2d 808 (La. Ct. App. 2000). The plaintiff in *Cullum* was injured when, during surgery, a stitch was negligently left in her bladder. In an effort to establish that her action had been timely filed, she relied, in part, on a continuing tort theory based upon her physicians' failure to subsequently "look for, detect, or remove the suture during subsequent treatments." *Collum*, 763 So. 2d at 811. In rejecting application of the continuing tort theory in the manner proposed by the plaintiff, the court observed that "'[a] continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act.' *Crump v. Sabine River Authority*, 98-2326 (La.6/29/99), 737 So. 2d 720, 728." *Collum,* 763 So. 2d at 811. Accordingly, the court concluded that,

> [i]n the present case, Mrs. Collum's treating physicians had not seen her for several years after the alleged malpractice; as such, there has been no continued chain of malpractice which would warrant the application of the continuing tort doctrine to this case. *Her suffering, although lamentable, is simply "the continuation of the ill effects of an original, wrongful act,"* and a claim for such suffering is statutorily prescribed.

*Id.* (emphasis added). *See also Stanford v. Administrators of Tulane Educ. Fund*, 975 So. 2d 104, 109-10 La. Ct. App. 2008) ("In order to allege a continuing tort, a plaintiff must allege both continuous action and continuous damage. . . . Thus, in the case *sub judice*, for

24

[plaintiff] Stanford's argument to prevail, we must find on the record before us that [defendant] Dr. Whitecloud's prescribing of narcotic pain relievers over an 11-year period [following an allegedly negligent surgical procedure performed by Dr. Whitecloud] rises to the level of a continuing tort resulting in continuous damage. We find that it does not.").

Based upon the foregoing, we now hold that in the context of a medical malpractice action, in order to establish a continuing tort theory a plaintiff must show repetitious wrongful conduct. Merely establishing the continuation of the ill effects of an original wrongful act will not suffice.

Applying the forgoing standard to the instant case, we will assume, for the sake of argument, that Mr. Forshey's post-operative visits with Dr. Jackson produced repetitious wrongful conduct. Nevertheless, the circuit court was correct in dismissing the case. We observe that the Forsheys' complaint fails to set out a cause of action for a continuing tort. There are simply no allegations of repetitious wrongful conduct anywhere in the complaint. Although the certificate of merit that was attached as an exhibit to the complaint indicates that Dr. Jackson breached the standard of care during each of his examinations of Mr. Forshey following surgery, *i.e.* by failing to diagnose the cause of Mr. Forshey's pain, a certificate of merit cannot be used to create a cause of action that is not set out in the complaint. In other words, the purpose of a certificate of merit is to *support* a cause of action that has been set out in a complaint, not to *create* a cause of action independent of that which

25

is set out in a complaint.  Indeed,

> it has been held that essential material facts must appear on the face of the complaint.  *See Greschler v. Greschler*, 71 A.D.2d 322, 325, 422 N.Y.S.2d 718, 720 (1979).
>
> The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist. *German v. Killeen*, 495 F. Supp. 822, 827 (E.D. Mich. 1980); *see also Jenkins v. McKeithen*, 395 U.S. 411, 423-24, 89 S. Ct. 1843, 1849-50, 23 L. Ed. 2d 404, 417-18 (1969).  *See* W. Va. R. Civ. P. 8(a).
>
> The federal courts have held that in order to withstand a 12(b)(6) motion, more detail is required than the bald statement that the plaintiff has a valid claim of some type against the defendant.   5 C. Wright and A. Miller, Federal Practice and Procedure: Civil 596 (1969); *see also Jackson v. Nelson*, 405 F.2d 872, 873 (9th Cir.1968); *Stewart v. Hevelone*, 283 F. Supp. 842, 844 (D. Neb. 1968).  Thus, rules of civil procedure clearly contemplate some factual statement in support of the claim. *Huey v. Barloga*, 277 F. Supp. 864, 871 (N.D. Ill. 1967).

*Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 564 (1986) (per curiam) (footnote omitted).  *See also* Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 347 ("[A] trial court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." (footnote omitted)).  Thus, "[a]lthough a plaintiff's burden in resisting a motion to dismiss is a relatively light one, the plaintiff is still required at a minimum to set forth sufficient information to outline the elements of his/her claim.  If plaintiff fails to do so, dismissal is proper." *Id.* at 348 (footnotes omitted).

Because the Forsheys failed to set out a cause of action for a continuing tort in their complaint, the circuit court did not err in dismissing the same.


**IV.**

**CONCLUSION**

Based upon the forgoing, we affirm the April 3, 2007, order of the Circuit Court of Kanawha County, which granted Dr. Jackson's motion to dismiss this action.


Affirmed.