# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2025 Term

**FILED**
**September 10, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-ICA-452

_____

MICHELLE GORDON,
Plaintiff Below, Petitioner,

v.

JEFFERSON COUNTY COMMISSION, TRICIA JACKSON, individually and in her official capacity as JEFFERSON COUNTY COMMISSIONER, and THOMAS HANSEN, individually and in his official capacity as JEFFERSON COUNTY SHERIFF, Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Jefferson County
Honorable Michael D. Lorensen, Judge
Civil Action No. CC-19-2022-C-112

AFFIRMED
_____

Submitted:  March 7, 2025
Filed:  September 10, 2025

Walt Auvil, Esq.
Kirk Auvil, Esq.
The Employment Law Center, PLLC
Parkersburg, West Virginia
Counsel for Petitioner

Andrew R. Herrick, Esq.
James Marshall, Esq.
Adam K. Strider, Esq.
Bailey & Wyant, PLLC
Martinsburg, West Virginia
Counsel for Respondents Jefferson
County Commission and Tricia Jackson

Wendy E. Greve, Esq.
Evan S. Olds, Esq.
Pullin Fowler Flanagan Brown & Poe, PLLC
Martinsburg, West Virginia
Counsel for Respondent Thomas Hansen

JUDGE WHITE delivered the Opinion of the Court.

CHIEF JUDGE LORENSEN, not participating.

WHITE, JUDGE:

Petitioner Michelle Gordon appeals the September 20, 2023, orders of the Circuit Court of Jefferson County granting Defendants Tricia Jackson ("Commissioner Jackson") and the Jefferson County Commission's Motion to Dismiss and granting Defendants Thomas Hansen ("Sheriff Hansen"), Kevin Boyce, and Emma Brown's Motion to Dismiss. For reasons stated below, we affirm these orders.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Ms. Gordon is a former Finance Director for Jefferson County, West Virginia who resigned from her position on December 23, 2021, was rehired on May 20, 2022, and resigned again on October 17, 2022. According to the allegations in her Amended Complaint, which we must take as true for purposes of this appeal, she reported several instances of financial misconduct and policy violations related to the Sheriff's Office of Jefferson County to the Jefferson County Commission. Among other charges, she questioned Sheriff Hansen's actions (1) using his County purchase-card for personal expenses, including meal reimbursements for his wife and buying alcoholic beverages during a Sheriff's Association Conference; (2) requesting special event overtime pay for his deputies; (3) making an inappropriate vehicle purchase request for four Chevrolet Tahoes; (4) allowing the Chief Tax Deputy to make accounting errors that favored Toni Milbourne, a County vendor; (5) creating a new full-time position of home confinement

1

deputy for his step-daughter without proper advertising, misrepresenting to the county commission that his step-daughter was an active part-time employee when she had only worked twenty-four hours in 2020; and (6) requesting that his stepdaughter be placed on unlimited leave without pay so she could maintain her insurance.

In her Amended Complaint, Ms. Gordon further alleged that Commissioner Jackson, the Jefferson County Commission, and Sheriff Hansen retaliated against her by publishing defamatory statements, conducting "illegal" background checks through police databases, and sharing the personal data obtained from those background checks, including her address, date of birth, social security number, and driver's license number, with a third party, resulting in "public dissemination" of this information. Ms. Gordon contends that she was subsequently informed by the IRS that her social security number had been "stolen."

On September 21, 2022, Ms. Gordon filed a complaint against the Jefferson County Commission, Barbara Fuller, Christine Ence, Toni Milbourne, Kevin Boyce, Glen Kilmer, Emma Brown, Commissioner Jackson (in her personal and official capacities), Sheriff Thomas Hansen (in his personal and official capacities), Jacki Shadle, the Jefferson County Clerk (in her personal and official capacities), and Mark Everhart. The complaint contained three counts, one each for defamation and libel, whistle-blower retaliation under

West Virginia Code § 6C-1-3(a) (2020), and political affiliation discrimination under West Virginia Code § 29-6-20(a) (2008).[1]

On October 24, 2022, Ms. Gordon filed an Amended Complaint, which added one defendant, the Jefferson County Sheriff's Office; removed one defendant, Christine Ence; and added an additional count for invasion of privacy. According to the circuit court's order, an additional complaint was subsequently filed on December 6, 2022, but it was "substantively the same as the original September 21, 2022, Complaint and with the same exhibits attached to the Amended Complaint but with some duplicates." This additional complaint was not included in the appendix on appeal, so for purposes of this opinion, we shall refer to the language and exhibits of the Amended Complaint, as did the circuit court.[2]

On September 20, 2023, the circuit court entered orders dismissing the claims against Sheriff Hansen, Commissioner Jackson, the Jefferson County Commission, and various other defendants. On October 15, 2024, the circuit court entered an order dismissing an additional defendant, Mark Everhart. Ms. Gordon now appeals from the

---

[1] Ms. Gordon did not object to the dismissal of the political affiliation discrimination count in the circuit court, and the dismissal of that count is not an issue on appeal.

[2] According to the circuit court's order dismissing the claims against Commissioner Jackson and the Jefferson County Commission, Ms. Gordon's counsel "represented that the Amended Complaint contains all claims asserted and exhibits filed by Plaintiff…"

September 20, 2023, orders dismissing Sheriff Hansen, Commissioner Jackson, and the Jackson County Commission.[3]

## II.    STANDARD OF REVIEW

Our review of the circuit court's orders granting the motions to dismiss is de novo. *Bajada v. Crystal Lake Prop. Owners' Ass'n,* No. 23-ICA-292, 2024 WL 3581344, at *4 (W. Va. Ct. App. July 30, 2024) (memorandum decision) (quoting Syl. Pt. 2*, State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 773, 461 S.E.2d 516, 519 (1995)). This review is governed by the same principles applicable to the circuit court's decision.

West Virginia is a notice pleading jurisdiction, *see Pierson v. Miles*, No. 22-0501, 2023 WL 6012535, at *2 (W. Va. Sept. 15, 2023) (memorandum decision), so a complaint need only contain a short and plain statement of the claim sufficient to put a defendant on fair notice, *id.*, and to show that the pleader is entitled to some form of relief. *See* W. Va. R. Civ. Pro. 8(a). "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522

---

[3] The same order which dismissed the claims against Sheriff Hansen also dismissed the claims against his staff, Deputy Boyce and Administrative Assistant Brown, but those dismissals have not been raised on appeal.

(1995). "A court reviewing the sufficiency of a complaint should view the motion to dismiss with disfavor, should presume all of the plaintiff's factual allegations are true, and should construe those facts, and inferences arising from those facts, in the light most favorable to the plaintiff." *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020) (citing *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 538, 236 S.E.2d 207, 212 (1977)).

However, Rule 8 requires that a "complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is." *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995); *see also Highmark W. Va., Inc. v. Jamie*, 221 W. Va. 487, 491, 655 S.E.2d 509, 513 (2007) (per curiam). Rule 8 does not justify a carelessly drafted or baseless pleading. A "plaintiff's attorney must know every essential element of his cause of action and must state it in the complaint." *Newton v. Morgantown Mach. & Hydraulics of WV, Inc.*, 242 W. Va. 650, 653, 838 S.E.2d 734, 737 (2019) (quoting *Sticklen v. Kittle*, 168 W. Va. 147, 164, 287 S.E.2d 148, 158 (1981)). Furthermore, the complaint must contain sufficient information to outline the elements of a claim or permit inferences that they exist. *Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) (per curiam). To state a claim and avoid dismissal, "essential material facts must appear on the face of the complaint." *Burke v. Wetzel Cty. Comm'n*, 240 W. Va. 709, 721, 815 S.E.2d 520, 532 (2018).

The federal and state constitutions require trial courts to apply a stricter pleading standard in defamation actions filed by public officials or public figures when considering Rule 12(b)(6) motions to dismiss. In most kinds of cases, a court may only grant a motion to dismiss where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

> [A]lthough this rule is generally applicable in the ordinary case, "[t]he First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution require that trial courts apply a stricter standard in appraising defamation actions filed by public officials or public figures under a motion to dismiss filed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the complaint should be dismissed under Rule 12(b)(6)."

*Giles v. Kanawha Cnty Bd. of Educ.*, No. 17-0139, 2018 WL 300605, at *2-3 (W. Va. Jan. 5, 2018) (memorandum decision) (quoting Syl. Pt. 3, *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778 (1986). With these standards in mind, we turn to the dismissal orders entered by the circuit court, focusing primarily on whether the complaint adequately pleads claims for defamation, invasion of privacy, and whistle-blower retaliation.[4]

---

[4] The parties have also briefed the issue of whether the respondents were entitled to statutory immunity under the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 et seq. (1986). However, it is unnecessary for this Court to reach that issue given our rulings on whether the various claims were adequately pleaded by Petitioner.

### III.  DISCUSSION

### A.  Petitioner's Claims Against Commissioner Jackson and the Jefferson County Commission

Ms. Gordon asserts claims against Commissioner Jackson and the Jefferson County Commission for defamation and whistle-blower retaliation,[5] both of which were properly dismissed by the circuit court.

### 1.  Defamation

Ms. Gordon asserts a claim for defamation and libel in Count I of her Amended Complaint,[6] alleging that Commissioner Jackson defamed her through certain

---

[5] In Count IV of her Amended Complaint, Petitioner asserts a claim for invasion of privacy, but almost all the facts alleged therein pertain only to Sheriff Hansen, his staff, or the Jefferson County Perspective, rather than Commissioner Jackson and the Jefferson County Commission. The final numbered paragraph of the Amended Complaint does state in general that: "Defendants' actions in repeatedly publicly misrepresenting Plaintiff's actions and character placed Plaintiff in a false light, invading her privacy thereby." To the extent that Ms. Gordon may have intended to raise a claim for invasion of privacy against Commissioner Jackson and the Jefferson County Commission, the vague and conclusory language of Paragraph 291 was far too cursory to meet the constitutionally required pleading standards for a false light claim against a public figure. Moreover, we note that this potential issue was poorly developed, if at all, in the circuit court or the briefing on appeal. Even if this claim had been properly pleaded and raised, it would fail for the same reasons, including the failure to allege actual malice, as the invasion of privacy claim against Sheriff Hansen which we discuss below.

[6] "Defamation published in written form, as opposed to spoken form, constitutes libel." Syl. Pt. 8, *Greenfield v. Schmidt Baking Co*., 199 W. Va. 447, 485 S.E.2d 391 (1997). Spoken slander and written libel are treated and analyzed in the same way under West Virginia law. *See Workman v. Kroger Ltd. Partnership I*, Civil Action No. 5:06-CV-00446, 2007 WL 2984698, at *4 (S.D. W. Va. Oct. 11, 2007) ("Because slander and libel are treated together as a claim for defamation under West Virginia law, the Court will examine the claim under the same standard regardless of how it is characterized.") (footnote omitted).

7

communications, including a letter she sent to the Jefferson County Prosecuting Attorney encouraging him to investigate allegations which had been made about Ms. Gordon to determine their truth. The Amended Complaint also alleges that Commissioner Jackson made defamatory communications in social media posts on her public official Facebook page and in quotes in two newspaper articles.[7]

"The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. Pt. 1, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983). The pleading and proof requirements for public officials or public figures are more burdensome, requiring "actual malice," rather than mere negligence, on the part of the defendant.

Under West Virginia law, "Plaintiffs who are public officials[8] or public figures must prove by clear and convincing evidence that the defendants made their

_____

[7] As the circuit court noted in its order, Ms. Gordon also made vague references to alleged social media posts which were not specifically identified in the Amended Complaint. It is impossible to determine what statements may have been contained in such posts which the petitioner may feel were false, or defamatory, or made with actual malice.

[8] "Public officials are those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of government affairs; however, the public official category cannot be thought to

defamatory statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 346, 480 S.E.2d 548, 555 (1996) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). A public official or public figure can sustain an action for defamation only if she "can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." *Id.* at 352, 480 S.E.2d at 561 (quoting Syl. Pt. 1, in part, *Sprouse v. Clay Comm., Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975)).

"The initial step when assessing a defamation/libel claim is to determine whether the plaintiff is a public or private figure." *Zsigray v. Langman*, 243 W. Va. 163, 169, 842 S.E.2d 716, 722 (2020). "Public figures are persons not occupying a government office but who 'have assumed roles of especial prominence in the affairs of society .... [T]hose classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event,

include all public employees." Syl. Pt. 10, in part, *Hinerman v. Daily Gazette Co., Inc.*, 188 W. Va. 157, 423 S.E.2d 560 (1992). In this case, none of the parties have alleged that Ms. Gordon should be treated as a public official for purposes of our defamation analysis, so our opinion will focus on whether she was a public figure.

9

they invite attention and comment.'" *Williams v. Rigg*, 458 F. Supp.3d 468, 476-77 (S.D.W. Va. 2020) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)).

West Virginia recognizes both "all-purpose public figures" and "limited purpose public figures." All-purpose public figures are people "who achieve such pervasive fame or notoriety that they become public figures for all purposes and in all contexts" while limited purpose public figures are people "who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues." Syl. Pt. 3, *Wilson v. Daily Gazette Co.*, 214 W. Va. 208, 588 S.E.2d 197 (2003). Regarding limited public figures, the Supreme Court of Appeals of West Virginia ("SCAWV") has held:

> A libel plaintiff is a limited purpose public figure if the defendant proves the following: (1) the plaintiff voluntarily engaged in significant efforts to influence a public debate—or voluntarily assumed a position that would propel him to the forefront of a public debate—on a matter of public concern; (2) the public debate or controversy and the plaintiff's involvement in it existed prior to the publication of the allegedly libelous statement; and (3) the plaintiff had reasonable access to channels of communication that would permit him to make an effective response to the defamatory statement in question.

Syl. Pt. 3, *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 480 S.E.2d 548 (1996).

10

In this case, the circuit court correctly held that Ms. Gordon was at least a limited public figure for purposes of defamation analysis. As the circuit judge explained in his decision:

> Here, Plaintiff had reasonable access to channels of communications to the Sheriff as evidenced by her own allegations that she emailed Sheriff Hansen. Of course, Plaintiff also had reasonable access to channels of communications to the Jefferson County Commission and its Commissioners. Nonetheless, as Plaintiff's Exhibit B to her Amended Complaint establishes, in mid-October 2021 (before the Sheriff's statement was published), Plaintiff criticized the Sheriff's budget request publicly, and argued that the budget request should be denied, which it was. As Plaintiff[']s Exhibit K establishes, Plaintiff further voluntarily engaged in significant efforts to influence a public debate when she wrote an 8-page single spaced letter to the West Virginia State Auditor's office on December 22, 2021, alleging a series of "noncompliant" activities of the Defendants, including that the Sheriff improperly attempted to create a new captain rank, was somehow involved in a fraud scheme, and misused the purchase card. On September 1, 2022, Plaintiff emailed third-party individuals, alleging that Stephanie Grove was removed due to some "partisan political issue." Plaintiff's own Amended Complaint establishes how involved she was in the matters that she alleges support her claims. Accordingly, Plaintiff is either a public figure or limited purpose public figure, and therefore has to prove her defamation allegations by clear and convincing evidence.

On appeal, Ms. Gordon argues that the circuit court erred in holding that she was a limited public figure at the motion to dismiss stage, rather than the summary judgment stage, observing that the Respondents' motions and memoranda, devoid of any

11

exhibits, were not evidence of her status. We agree that Respondents' motions and memoranda alone were not evidence of Ms. Gordon's status, but her 291 paragraph Amended Complaint, with more than 100 hundred pages of exhibits, provided ample support for the circuit court's findings and dismissal of the underlying claims. In deciding a motion to dismiss, a trial court may consider the factual allegations of the complaint, as well as any documents attached to the complaint or referenced therein, public records, and any matters of which the court may take judicial notice. Syl. Pt. 1, *Forshey v. Jackson*, 222 W. Va. 743, 746 n.8, 671 S.E.2d 748, 751 n.8 (2008); *see also Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020); Louis J. Palmer & Robin J. Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure* 407 (5th ed. 2017).

When the facts so gleaned from the complaint and related documents or matters of which the court may take judicial notice conclusively establish an affirmative defense, the court may grant a motion to dismiss for failure to state a claim upon which relief may be granted. *See Gulas v. Infocision Mgmt. Corp.*, 215 W. Va. 225, 599 S.E.2d 648 (2004) (affirming dismissal based on affirmative defense of res judicata); *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008) (granting motion to dismiss based on affirmative defenses of statute of limitations and statute of repose); *Appalachian Mountain Advocates v. WVU*, No. 19-0266, 2020 WL 3407760 (W. Va. June 18, 2020) (memorandum decision) (granting motion to dismiss a FOIA lawsuit based on the economic development

12

exemption); *see generally* Louis J. Palmer & Robin J. Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure* 410 (5th ed. 2017) ("In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim…the facts that establish the defense must be definitively ascertainable from the allegations of the complaint… [and] the facts so gleaned must conclusively establish the affirmative defense."); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, Westlaw (4th ed. database updated May 2025) (affirmative defenses may be decided on a motion to dismiss).

Thus, a plaintiff's status as a public figure may be determined on a motion to dismiss if the pleadings provide sufficient information to make this determination. *Prince v. Intercept*, 634 F. Supp.3d 114, 134 (S.D.N.Y. 2022); *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp.3d 1005, 1017 (N.D. Cal. 2017) ("[Plaintiff's] own allegations about their world-wide reach and influence, as well as the public nature of its work in forestry and sustainability, show that the company is a limited public figure for purposes of its participation in the forestry industry, including in the Boreal forest."); *Heller v. NBCUniversal, Inc.*, No. CV-15-09631-MWF-KS, 2016 WL 6573985, at *5 (C.D. Cal. Mar. 30, 2016) (finding a limited-purpose public figure where "Plaintiff's own allegations show that his relationship with N.W.A. was the subject of great public interest that prompted him to write a book recounting his side of the story."); *Biro v. Conde Nast*, 963 F. Supp.2d 255, 270 (S.D.N.Y. 2013) ("Where the question whether a plaintiff is

a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage."), a*ff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015); *Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp.3d 159, 168 (S.D.N.Y. 2023) ("Where the question whether a plaintiff is a public figure can be determined based upon the pleadings alone, the Court may deem a plaintiff a public figure at the motion to dismiss stage."); *Peterson v. Gannett Co. Inc.*, No. CV-20-00106-PHX-MTL, 2020 WL 1935520, at *7 (D. Ariz. Apr. 22, 2020) ("In reaching this conclusion, the Court notes that numerous other courts have found limited-purpose public figures at the motion to dismiss stage."). Accordingly, we hold that the circuit court's determination that Ms. Gordon was at least a limited public figure for purposes of defamation analysis was not premature.

In its thorough and well-reasoned order, the circuit court discussed each of the allegedly defamatory communications by Commissioner Jackson, finding that the Amended Complaint failed to identify the statements which were supposedly false statements of fact, rather than expressions of opinion. We agree.[9] Furthermore, the circuit

---

[9] Our review of the 291 paragraphs in the Amended Complaint located only three paragraphs which expressly allege statements which are both false and defamatory, and two of them do not involve a statement by Commissioner Jackson. See Paragraph 219 ("On December 1, 2021, another post appeared on the Jefferson County Perspective page calling for Plaintiff's termination, falsely saying Plaintiff was arrested for child abuse, claiming that Plaintiff had admitted to falsifying a county document, and claiming that Plaintiff had misused funds in Hagerstown,"); Paragraph 143 ("Everhart then posted the letter [between County Clerk, Stephanie Grove, and the Clerk's former attorney, Dan Casto] to Jefferson County Perspective's Facebook page, with defamatory remarks repeating the County

14

court correctly concluded that the Amended Complaint did not allege that Commissioner Jackson made any statements with actual malice, that is, with a knowledge that they were false, or with a reckless disregard for their truth. Consequently, the Amended Complaint's allegations concerning Commissioner Jackson did not satisfy the pleading standard required when public figures seek to recover for defamation. Accordingly, we find no error with the circuit court's dismissal of such claims.

## 2. Whistle-blower Retaliation

The whistle-blower count in Ms. Gordon's Amended Complaint relies on West Virginia Code § 6C-1-3(a) which states that:

> No employer may discharge, threaten, or otherwise discriminate or retaliate against an employee by changing the employee's compensation, terms, conditions, location, or privileges of employment because the employee, acting on his or her own volition, or a person acting on behalf of or under the direction of the employee, makes a good faith report, or is about to report, verbally or in writing, to the employer or appropriate authority, an instance of wrongdoing or waste.

Clerk's false accusations of stealing a signature key, and stealing or limiting [the Clerk's] constitutional duties."). Mr. Everhart was dismissed as a defendant in the underlying action and is not a party to this appeal. The complaint does not state that he acted at the direction of Commissioner Jackson or with her knowledge. A third statement vaguely alleges false and defamatory statements and posts made by several people and publications, including Commissioner Jackson. See Paragraph 137 ("From September 23, 2021, Jefferson County Perspective, Conservative Chicks of West Virginia, Defendant Jackson, Defendant Shadle, and Defendant Hansen made defamatory and false statements and posts on Facebook and to newspapers regarding the Plaintiff.").

The circuit court dismissed this count against Commissioner Jackson and the Jefferson County Commission after finding it was not adequately pleaded. We agree. The Amended Complaint does not allege that Ms. Gordon was terminated. In fact, the Amended Complaint acknowledges and specifically states that Ms. Gordon resigned her employment with the Jefferson County Commission. Further, the Amended Complaint does not contain any allegations that the "compensation, terms, conditions, location, or privileges of employment" of Ms. Gordon's employment with the Jefferson County Commission were changed in alleged retaliation for her whistle-blowing.

Ms. Gordon argues that the criticism and harassment allegedly committed by the Jefferson Couty Commission, Commissioner Jackson, and others acting in concert, adversely changed the terms and conditions of her employment. In support of this position, she cites federal cases interpreting allegedly similar language in Title VII, but we do not find the language of that federal statute to be analogous to that of our whistle-blower statute, West Virginia Code § 6C-1-3(a). Moreover, the cases construing Title VII do not hold that criticism of an employee's job performance and methods constitute a change of the terms and conditions of their employment. Instead, these cases hold that Title VII's provision against discriminating against employees for exercising their rights under Title VII is not limited to changing the terms and conditions of employment.

16

Section 703-2(a)(1) of the United States Code, which sets out Title VII's substantive antidiscrimination provision, provides in relevant part:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to    discriminate against any individual *with respect to his compensation, terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin; …

(Emphasis added). Unlike West Virginia Code § 6C-1-3(a), Title VII contains a retaliation provision separate from the substantive discrimination provision.  Section 704(a) of Title VII provides that:

> It shall be an unlawful employment practice for an employer *to discriminate against* any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e–3(a).

The Supreme Court of the United States reviewed the language of these two provisions and concluded:

> The italicized words in the substantive provision—"hire," "discharge," "compensation, terms, conditions, or privileges of employment," "employment opportunities," and "status as an employee"—explicitly limit the scope of that provision to actions that affect employment or alter the conditions of the workplace. No such limiting words appear in the antiretaliation provision.

*Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). Based in large part on the different language of these two provisions, the Court went on to hold "that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory

17

actions that affect the terms and conditions of employment," *id*. at 64, and that the jury considering a Title VII retaliation claim "was not required to find that the challenged actions were related to the terms or conditions of employment." *Id.* at 70; *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 213 (4th Cir. 2022) ("The Supreme Court [in *Burlington Northern*] held that the phrase 'discriminate against' in the anti-retaliation provision does not confine actionable retaliation to adverse actions that alter the terms and conditions of employment.").

However, in our West Virginia whistle-blower statute, West Virginia Code § 6C-1-3(a), there is one provision, not two, and the words of limitation—"the employee's compensation, terms, conditions, location, or privileges of employment"—appear in the same provision and modify the language forbidding retaliation for whistle-blowing. Some might favor a broader scope for "discriminate" or "retaliate" but it is not the job of this court to rewrite the statute. *See generally Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.").

**B. Petitioner's Claims Against Sheriff Hansen**

Ms. Gordon's primary claims against Sheriff Hansen are for defamation and invasion of privacy.[10]

**1. Defamation**

Ms. Gordon's Amended Complaint identifies one allegedly defamatory statement by Sheriff Hansen, which appeared in *The Spirit of Jefferson and Farmer's Advocate* on October 20, 2021, and was attached to the Amended Complaint as Exhibit B. Sheriff Hansen's statement, which began by saying that he had "become aware of allegations that members of his office were involved in exposing the background of the Jefferson County Financial Director," was offered in response to allegations that his office had acted inappropriately. In this statement, Sheriff Hansen went on to opine that the county finance director has no authority over how an elected county official spends their budget, and that the financial director had "overreached" under West Virginia Code § 7-7-7 (2011) because the county financial director "has little to no control over how the Elected Official chooses to spend their budget as long as the Official stays within their set budget." Based on our review of the record, we agree with the circuit court that Sheriff Hansen's opinion

---

[10] To the extent that Ms. Gordon may seek to pursue a claim for whistle-blower retaliation against Sheriff Hansen, that claim fails because Sheriff Hansen was not her employer. Moreover, as discussed above, the Amended Complaint fails to adequately allege a claim under our whistle-blower statute because Ms. Gordon was not discharged from her employment, and she did not experience a change in the terms and conditions of her employment; so, there is no actionable claim for retaliatory discharge against anyone.

19

concerning a matter of public concern was entitled to absolute privilege. *See* Syl. Pt. 3, *Maynard v. Daily Gazette Co.,* 191 W. Va. 601, 447 S.E.2d 293 (1994) ("…statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action.") (quoting Syl. Pt. 7, *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778 (1986)).[11] In fact, even if Sheriff Hansen's opinion were treated as a statement of fact (rather than an opinion), the Amended Complaint does not allege that this statement was false, that it was uttered with the knowledge that it was false or with a reckless disregard for the truth, or that it was intended to harm Ms. Gordon (who was not even named in Sheriff Hansen's statement).

## 2. Invasion of Privacy

According to the Amended Complaint, Sheriff Hansen directed Deputy Kevin Boyce, Deputy Glen Kilmer, and Administrative Assistant Emma Brown to access Ms. Gordon's background information from a law enforcement database[12] and directed

---

[11] "[W]hether a statement is one of fact or opinion is an issue that must be decided initially by a court." Syl. Pt. 7, in part, *Long v. Egnor*, 176 W. Va. 628, 346 S.E.2d 778 (1986).

[12] According to the Amended Complaint, Deputy Boyce "illegally searched" Ms. Gordon's name and driver's license number in the Criminal Justice Information System on July 29, 2021. Emma Brown, the Sheriff's Office's Administrative Assistant, then printed Ms. Gordon's citation record, legal records, and warrant record. Deputy Kilmer viewed Ms. Gordon's records during this process. On August 25, 2021, Deputy Boyce again searched Ms. Gordon's name, this time from a mobile unit and took a screen shot of Ms. Gordon's information, including her social security number, driver's license, date of birth, and address.

Deputy Kilmer to deliver this information to Barbara Fuller. The Amended Complaint also alleges that the "Sheriff's Office, at the direction of Defendant Hansen, disseminated the information from Plaintiff's background check to a local organization called Jefferson County Perspective, who then had multiple meetings at the home of [Defendant] Christine Ence as they plotted the best way to use this information against Plaintiff so that she would be fired." Paragraph 136 of the Amended Complaint alleges that: "On September 23, 2021, Jefferson County Perspective 'doxed'[13] Plaintiff by posting [on its Facebook page] a screenshot[,] taken by Deputy Boyce[,] of Plaintiff's information from the Criminal Justice Information System including her social security number, date of birth, home address and driver's license number."

An invasion of privacy may occur when there is (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public. *See* Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983). Here, the Amended Complaint alleges that Sheriff Hansen instructed members of the Sheriff's Department to conduct

---

[13] Merriam-Webster's Online Dictionary defines "dox" as a transitive verb meaning "to publicly identify or publish private information about (someone) especially as a form of punishment or revenge." https://www.merriam-webster.com/dictionary/dox. It is a "respelling of *docs*, plural of *doc* (short for DOCUMENT entry 1)…" *Id.* The term is of recent vintage, as its first known use was in 2009. *Id.*

"illegal"[14] background searches of Ms. Gordon using police databases, and to provide this information to third parties. In addition, the Amended Complaint alleges that Ms. Gordon was placed in a false light. Thus, the complaint invokes three of the four categories of invasion of privacy, omitting only the appropriation of a person's name or likeness.

Regarding the first category of invasion of privacy, we find that the conclusory allegations concerning the two background checks conducted by personnel of the Sheriff's Office were not sufficient to plead an unreasonable intrusion upon the seclusion of Ms. Gordon. *See Backus v. City of Parkersburg*, 980 F. Supp.2d 741 (S.D.W. Va. 2013) (dismissing complaint which alleged that law enforcement officers had "violated U.S. Privacy Law & my 1st, 4th & 14th Amendment Rights when they conducted 'illegal' background checks on me.").

We also conclude that providing the screenshot to Barbara Fuller and/or the Jefferson County Perspective did not establish liability for the second category of invasion of privacy, unreasonable publicity given to another's private life,[15] noting that the Sheriff

---

[14] Neither Ms. Gordon's Amended Complaint nor her briefing on appeal define what constitutes an "illegal" background search.

[15] The claim of unreasonable publicity given to another's private life has the following elements:

and his staff were not the ones who published the screenshot. Moreover, there are no allegations in the Amended Complaint that Sheriff Hansen knew, or reasonably should have known, that the Jefferson County Perspective would publish the screenshot in an unredacted form that would reveal such sensitive personal information as Ms. Gordon's social security number.

The final category of invasion of privacy implicated by the complaint, "publicity that unreasonably places another in a false light before the public," has the following elements:

> One who *gives publicity to* a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

---

> (1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.

*Davis v. Monsanto Co.*, 627 F. Supp. 418, 421 (S.D.W. Va. 1986); Restatement (Second) of Torts § 652D (Am. L. Inst. 1977).

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Taylor v. W. Va. Dept. of Health and Hum. Res.*, 237 W. Va. 549, 569-70, 788 S.E.2d 295, 315-16 (2016) (quoting Restatement (Second) of Torts § 652E (Am. L. Inst. 1977)). In addition, "although widespread publicity is not necessarily required for recovery under a defamation cause of action, it is an essential ingredient to any false light invasion of privacy claim." *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 716, 320 S.E.2d 70, 87-8 (1983); *see also Blankenship v. Trump*, 558 F. Supp.3d 316, 330 (S.D.W. Va. 2021) (discussing elements of false light claim under West Virginia law).

As one might expect, there are "a number of similarities between actions for false light invasion of privacy and actions for defamation. The most prominent characteristic shared by the two causes of action is that the matter publicized as to the plaintiff must be untrue." *Crump v. Beckley Newspapers, Inc.*, at 715-16, 320 S.E.2d at 87. In this case, the Amended Complaint does not allege that the information provided by Sheriff Hansen or his staff, either the statement or the screenshot, was false.

Moreover, privacy law recognizes the defense of "newsworthiness" which allows "a defendant to avoid all liability once established." *Id*. at 712, 320 S.E.2d at 83. "There are two classes of newsworthy subjects which are privileged under privacy law: public figures and matters of legitimate public interest." *Id*. Similar to defamation, the

24

determination of whether a person is a "public figure" focuses on "the individual either by assuming a role of special prominence in the affairs of society or by thrusting himself to the forefront of a particular public controversy … has become a public figure." *Id*. (internal quotation marks and citations omitted).

"The 'public figure' doctrine in privacy law operates in the same manner as qualified privileges operate in defamation law. Although normally a bar to recovery, the 'public figure' privilege may be lost through abuse, excess or actual malice." *Id*. at 712, 320 S.E.2d at 83-4.[16] As noted above, the Amended Complaint does not allege that Sheriff Hansen acted with actual malice, i.e., either that he knew that his statement and screenshot were false, or that he acted with reckless disregard for the truth when they were published. To avoid dismissal of a false light claim, a plaintiff must allege actual malice regarding a public figure. *See Blankenship v. Trump*, 558 F. Supp.3d 316, 330 (S.D.W. Va. 2021); *Herman v. Muhammed*, 329 A.3d 1072, 1081 (N.J. Super. 2024) ("We conclude Herman's amended complaint did not sufficiently allege a prima facie case of defamation and false-light invasion of privacy because she failed to assert facts that [show] defendants' statements … were made with actual malice."); *Greene v. Street*, 2010 No. 0303, 2011 WL 10525400, at *5 (Pa. Ct. Comm. Pleas Aug. 4, 2011) ("…Greene's failure to plead actual

---

[16] As with defamation, our state and federal constitutions require that the defendant must act with actual malice in false light cases involving public figures to be held liable. *See Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 769 (4th Cir. 2023) (under West Virginia law, public figures alleging false light claim must prove that the defendant made a false statement with actual malice).

25

malice in his Complaint warrants a dismissal of both his false light and defamation claims."). Here, we find that the failure of Ms. Gordon to adequately plead falsity and actual malice in the Amended Complaint justified the circuit court's dismissal of the false light claim against Sheriff Hansen, and accordingly, we find no error.

## IV.    CONCLUSION

Based on the foregoing, we affirm the September 20, 2023, orders of the Circuit Court of Jefferson County dismissing Sheriff Hansen, Commissioner Jackson, and the Jefferson County Commission.

Affirmed.